IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDAN HAUGE** <br> 67 Ridge Run Road <br> Sellersville, PA 18960 | : <br> : <br> : <br> : | CIVIL ACTION NO. |
| *Plaintiff* | : <br> : | |
| v. | : <br> : | |
| **WINGS MEDIA, LLC d/b/a** <br> **PODOPOLO** <br> 834 4th St #101 <br> Santa Monica, CA 90403 | : <br> : <br> : <br> : <br> : | |
| *and* | : <br> : | |
| **MELINDA WITTSTOCK** <br> 834 4th St. #101 <br> Santa Monica, CA 90403 | : <br> : <br> : <br> : | |
| *and* | : <br> : | |
| **STEPHAN LITTLE** <br> 834 4th St. #101 <br> Santa Monica, CA 90403 | : <br> : <br> : <br> : | |
| *Defendants* | : <br> : | |

**CIVIL ACTION COMPLAINT**

  **AND NOW** Comes Plaintiff, Jordan Hauge, by and through his undersigned counsel, Kaminsky Law, LLC, and avers as follows in support of his Complaint against Defendants, Wings Media LLC d/b/a Podopolo, Melinda Wittstock, and Stephan Little (collectively the "Defendants"):

         **I.**  **SUMMARY**

  1.  This is an employment wage payment action brought by Jordan Hauge, a former employee of Defendant Podopolo, who has been harmed by the Defendants' unlawful

refusal to pay his promised and agreed upon wages.

2. This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, et. Seq, and Pennsylvania common law.

3. Pursuant to the WPCL, Defendants Ms. Wittstock and Mr. Little are agents of Podopolo who participated in refusing to pay Plaintiff's wages and/or wage supplements and are therefore ***personally liable*** pursuant to the WPCL.

## II.   PARTIES

4. Plaintiff, Jordan Hauge ("Mr. Hauge") is an adult individual and Pennsylvania resident who may be served at 67 Ridge Run Road, Sellersville, PA 18960.

5. Defendant, Wings Media LLC d/b/a Podopolo ("Podopolo" or the "Company) is a Delaware Limited Liability Company with a registered agent that can be served at 834 4th St. Apt 101, Santa Monica, CA 90403. Upon information and belief this address is also Podopolo's headquarters.

6. Defendant, Melinda Wittstock ("Ms. Wittstock") is an adult individual who resides and may be served at 834 4th St. Apt 101, Santa Monica, CA 90403.  Ms. Wittstock is the Chief Executive Officer ("CEO") of Podopolo and may be served at Podopolo's headquarters—which also appears to be her residence.

7. Defendant, Stephan Little ("Mr. Little"), is an adult individual who may be served at 834 4th St. Apt 101, Santa Monica, CA 90403.  Mr. Little is the executive chairman of Podopolo and may be served at Podopolo's headquarters.

8. At all times material hereto, Podopolo was acting through its agents, board members, and employees who were acting within their scope of their employment / affiliation with and/or ownership of Podopolo.

9.      At all times material hereto, Podopolo was engaging in interstate commerce, is an "employer" within the meaning of the FSLA and WPCL, and is subject to the provisions of each said Act.

10.      At all times material hereto, Plaintiff was an "employee" of Podopolo as defined under the FLSA and WPCL and accordingly is entitled to the protections of each said Act.

### III.     JURISDICTION AND VENUE

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1131 as it involves the federal laws of the United States.

12.      This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff's damages exceed $75,000 and there is complete diversity of the parties.

13.      By virtue of their conduct, Defendants directed their actions towards the Commonwealth of Pennsylvania, transacted in the Commonwealth of Pennsylvania, and caused harm in the Commonwealth of Pennsylvania.

14.      Therefore, Defendants have the requisite minimum contacts to be held liable in the Commonwealth of Pennsylvania and this Court has personal jurisdiction over the Defendants pursuant to 42 Pa.C.S. § 5322.

15.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C § 1391 because Defendant Podopolo ran employment ads in this district, hired employees in this district, employed and paid Mr. Hauge in this district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

### IV.     FACTS COMMON TO ALL COUNTS

### Mr. Hauge's Employment with Podopolo

16.      Wings Media LLC, a Delaware corporation established in February 2019 that developed and operates a podcast application ("app") under the name Podopolo.

17. Ms. Wittstock is the founder and CEO of Podopolo.

18. Mr. Little, according to Podopolo's "about me" section of the website, is the executive chairman of Podopolo. *See* Screenshot of Podopolo's "About Me" website page attached hereto as **Exhibit A.**

19. At all times material hereto, Mr. Little worked closely with Ms. Wittstock and they jointly made employment and operational decisions for and relating to Podopolo.

20. On or about January of 2021, Mr. Hauge saw Podopolo's job posting for a Senior Product Manager position through a third-party staffing firm called XP3 Talent.

21. Mr. Hauge applied and interviewed with XP3 Talent first, was then interviewed by Ms. Wittstock in the second round of interviews, and Mr. Little performed the third and final interview.

22. Mr. Hauge was familiar with start-up companies in the technology industry and understood the importance of having adequate funding and cash flow to compensate staff.

23. Mr. Hauge was also expecting a child and, naturally, job and income security were a priority for him.[1]

24. Anticipating the new edition to the family, Mr. Hauge asked about Podopolo's financial stability at each interview and both Ms. Wittstock and Mr. Little independently assured him that there would be no issues paying employees' salary because the Company had more than enough money to support business with more funding on the way.

25. By way of limited example, Mr. Little told Mr. Hauge that his other company, Zero Limits Ventures ("ZLV"), would be providing funds to support Podopolo.

---

[1] Unbeknownst to Mr. Hauge at the time, his daughter would be born with a heart condition that requires regular doctor appointments and medication four times a day. Ultimately, as a result, Mr. Hauge's wife became a stay at home mom, and Mr. Hauge became the sole earner for their family.

26.     Shortly thereafter, Mr. Hauge was offered the position of Senior Product Manager with the following compensation:

    a.  "an annual compensation of $170,000 comprised of a starting base salary of $160,000 to be paid on a twice-monthly basis, as well as quarterly bonuses";

    b.  "participation in the company's equity plan (Unit Appreciation Rights Plan), with an initial grant of 8,000 profits interest units representing an initial 1.02% of the company to vest over a three-year period";

    c.  Eligibility to participate in Podopolo's "employee benefits program, including health, dental and vision"; and

    d.  "twelve (12) paid Personal Time Off (PTO) days as well as eight (8) federal holidays, and five (5) sick days, on an annual basis".

*See* Podopolo "Offer Letter" dated January 21, 2021, attached hereto as **Exhibit B**.

27.     Mr. Hauge accepted the offer and his first day with February 1, 2021.

28.     Between February 1, 2021, and October 2021, Mr. Hauge performed his Senior Product Manager role and received his bi-weekly gross pay of approximately $6,666.67 without issue.

### Podopolo Unilaterally Decreases Mr. Hauge's Pay

29.     In or about the beginning of October 2021, Ms. Wittstock informed the employees that there was an issue with funding and that they would not be paid via payroll, but instead by personal transfer through PayPal from Ms. Wittstock and/or Mr. Little.

30.     On or about October 18, 2021, Mr. Hauge received his paycheck through PayPal via personal transfer from Ms. Wittstock and/or Mr. Little at the wage set forth in the Offer Letter.

31. However, on his next paycheck, dated November 5, 2021, Mr. Hauge learned that Podopolo had drastically reduced his pay scale from One Hundred and Sixty Thousand Dollars ($160,000) per year to approximately Forty-Three Thousand Dollars ($43,000) per year.

32. As a result, his November 5, 2021 bi-monthly paycheck was for $1,666.67, instead of the $6,666.67 paycheck he was owed—a Five Thousand Dollar ($5,000.00) shortfall.

33. Mr. Hauge did not consent to this unilateral reduction in pay and immediately notified Ms. Wittstock and Mr. Little, who promised to reimburse him and told him that this was just a one-time reduction.

34. However, that was not the case. Over the next six paychecks, Mr. Hauge was paid $1,666.67 instead of $6,666.67.

35. Each time Ms. Wittstock and Mr. Little personally promised Mr. Hauge that the reduction in pay was temporary and that they would repay him everything that he was owed.

36. Additionally, while Mr. Hauge was being paid at this unacceptable reduced rate, he was regularly working overtime, often in excess of 16 hours a day, to ensure that the Podopolo app was ready before May 27, 2022, for Bottle Rock Napa 2022 ("Bottle Rock").

37. Ms. Wittstock and Mr. Little repeatedly asked Mr. Hauge and his team to work extra hours to get the app ready Bottle Rock and repeatedly promised that they would be compensated for their efforts.

38. In or about February of 2022, Mr. Hauge received one lump sum payment of approximately Thirty-Eight Thousand Dollars ($38,000), which accounted for *some*, but not all, of his back pay.

39. Shortly thereafter, also in February 2022, Ms. Wittstock and Mr. Little approached Mr. Hauge and asked if he would agree to postpone receipt of his salary for the previous two week pay period while Podopolo waited on funding.

6

40. Ms. Wittstock and Mr. Little pressured and guilted Mr. Hauge by telling him that, if he did not agree, then his entire team would not receive their paycheck.

41. Mr. Hauge reluctantly agreed to wait to receive his salary, but *only* on the condition that the rest of his team would still get their regular paychecks for that pay period and that he would be paid back in full for the missed payment before the end of February.

42. Although Ms. Wittstock and Mr. Little agreed, Mr. Hauge later learned that no one on his team was actually paid as promised.

43. Further, Defendants failed to pay Mr. Hauge in full by the end of February.

44. However, because Ms. Wittstock and Mr. Little regularly talked about how millions of dollars in funding was right around the corner and Mr. Little constantly boasted about deals that ZLV was closing and how that money would directly support Podopolo.

45. On one occasion, Mr. Little told Mr. Hauge that Fifty Thousand Dollars ($50,000.00) was nothing to him, that he could "knock on doors to raise Fifty Thousand Dollars" if he had to.

46. Mr. Hauge believed Defendants and reasonably relied on Defendants representations and their repeated promises of catching up on all overdue payments.

47. In reliance thereon, Mr. Hauge and his team worked multiple 16-hour days to get the app ready for Bottle Rock and successfully met their goals before the event.

48. Additionally, at the direction of Ms. Wittstock and Mr. Little, Mr. Hauge traveled to California to attend two events to help promote Podopolo, Podcast Movement: Evolutions in March of 2022, and Bottle Rock in May of 2022.

49. Similarly, Ms. Wittstock and Mr. Little assured him he would be reimbursed for both trips.

50. However, despite submitting expense reports and repeatedly seeking reimbursement, to date, Mr. Hauge has not been reimbursed for either event.

51. Mr. Hauge continued to be paid at the objectionable reduced rate of approximately $1,666.67 bi-weekly until July 29, 2022.

52. Moreover, considering the overtime hours that Mr. Hauge was putting in weekly, his compensation fell well below the federally mandated minimum wage.

53. Throughout this time period, Mr. Hauge continued to work hard, perform tasks for Podopolo, and meet goals and deadlines.

54. Further, at all times material hereto, Ms. Wittstock and Mr. Little continued to promise Mr. Hauge and Podopolo's other employees that funding was coming, and they would all soon receive their regular paychecks along with back pay to induce them to continue to work without their promised pay.

55. However, the promises didn't materialize.

56. As a result, Mr. Hauge struggled to support his family on this reduced salary, incurred substantial debt, and had to pay interest thereon as a result.

57. On August 1, 2022, after almost six months of not being paid his agreed upon wages, Mr. Hauge submitted his letter of resignation. *See* Letter of Resignation (the "Letter") dated August 1, 2022, attached hereto as **Exhibit C**.

58. Mr. Hauge had attempted to resign previously on several occasions. However, each time he tried, Ms. Wittstock and Mr. Little would manipulate Mr. Hauge into staying—despite not being paid his owed wages—by reminding him of his sick daughter and that he needed the health benefits that the company provided.

59. In his Letter, Mr. Hauge attached a summary of the backpay he was owed and due along with travel expenses and bonus payouts. The total amount requested was $62,026.56, not

including compensation for vested stock, and accrued but unused paid time off / sick days. *See* Ex. C.

60. That same day, Ms. Wittstock replied to Mr. Hauge's Letter and admitted that Podopolo owed him $46,666.67 in salary and $4,125 in bonus. *See* Email from Ms. Wittstock dated August 1, 2022, attached hereto as **Exhibit D**.

61. Ms. Wittstock also agreed to review Mr. Hauge's expenses for reimbursement and confirmed that Mr. Hauge vested 6,600 class B shares in Podopolo. *See* Ex. D.

62. Mr. Little was copied on both Mr. Hauge's correspondence and on Ms. Wittstock's response and did not object to the statements made by either Mr. Hauge or Ms. Wittstock. *See* Exs. C and D.

63. Despite Ms. Wittstock's admission that at least *some* amount of money was owed to Mr. Hauge, and promise to pay, to date Mr. Hauge has not been paid any of the compensation detailed in the Letter.

## Mr. Hauge is Forced to Take Out Loans

64. Mr. Hauge is the sole provider of his family which includes Mr. Hauge, his wife, and their daughter who was born with a heart condition.

65. Because of this heart condition, Mr. Hauge's wife takes care of their daughter full time and is unable to work.

66. When Mr. Hauge started at Podopolo, he informed Ms. Wittstock and Mr. Little that he was expecting a baby.

67. After Mr. Hauge's daughter was born and the heart condition was discovered, she had to spend seven days in the hospital before she was stabilized enough to come home.

68. Mr. Hauge spent every moment at the hospital, but Ms. Wittstock and Mr. Little refused to give him additional time off and he worked his position from the hospital.

69. Mr. Hauge worked those days without complaint because he relied on his salary from Podopolo to provide for his family.

70. Defendants' failure and refusal to pay Mr. Hauge caused him to struggle to pay his mortgage, his family's bills and utilities, and medical treatments for his child.

71. Despite Defendants' promise to pay him the agreed upon wages, as well as any back pay, none was forthcoming and Mr. Hauge was left with no choice but to borrow money from his family, put living expenses on credit cards, and take out several high interest rate loans.

72. On or about December 26, 2021, Mr. Hauge took out a loan with Marcus (Goldman Sachs) for Twenty-Two Thousand Five Hundred Dollars ($22,500) with an APR of 5.74%.

73. On or about June 26, 2022, Mr. Hauge took out a loan with Marcus (Goldman Sachs) for Twenty Thousand Dollars ($20,000) with an APR of 11.74%.

74. On August 1, 2022, Mr. Hauge took out a loan with Citi Flex Loan for Five Thousand ($5,000) with an APR of 6.99%.

75. On September 1, 2022, Mr. Hauge took a loan from family members for Twenty Thousand Dollars ($20,000).

76. In total, due to Defendants' failure to pay Mr. Hauge his agreed upon wages, he was forced to take out approximately Sixty-Seven Thousand Five Hundred Dollars ($67,500) and accrue substantial interest on the loans.

77. As of the filing of this Complaint, Mr. Hauge continues to struggle to pay these high interest loans and accrues approximately Three Hundred Dollars ($300.00) in interest each month on the loans.

**Damages**

78. At all times material hereto, Mr. Hauge performed work for Podopolo and was promised "at minimum, an annual compensation of $170,000" plus benefits and stock in exchange for such work. *See* Ex. A.

79. Without Mr. Hauge's consent, Defendants reduced his salary to one that amounts to Forty-Three Thousand Dollars ($43,000) per year—approximately one quarter of Mr. Hauge's promised wages.

80. Defendants promised to pay Mr. Hauge back pay, but never did.

81. Mr. Hauge is owed approximately $55,430 in back pay wages, plus stock in Podopolo, and in excess of $10,000 in accrued but unpaid vacation / sick days.

82. Additionally, Mr. Hauge met or exceeded all expectations required of him to receive the quarterly bonuses. Calculating even at the *lowest* possible compensation, Mr. Hauge is owed in excess of $11,625 in bonus compensation.

83. Further, Mr. Hauge took two work trips to California at the direction of Ms. Wittstock and Mr. Little for which he was not compensated.

84. Mr. Hauge also incurred general expenses including a subscription to Zoom premium and Calendly which Ms. Wittstock and Mr. Little had promised would be reimbursed.

85. Mr. Hauge is owed approximately $3,735 in expense reimbursement.

86. Further, as a direct and proximate result of Defendants' conduct and refusal to pay Mr. Hauge, he has paid in excess of Two Thousand Dollars ($2,000.00) in interest to date.

87. Further, interest on Mr. Hauge's loans continues to accrue at a rate of approximately Three Hundred Dollars ($300.00) per month.

## COUNT I
## Fair Labor Standards Act ("FLSA")
## FAILURE TO PAY MINIMUM WAGE AND OVERTIME
## 29 U.S.C. §201 *et seq.*
## PLAINTIFF v. ALL DEFENDANTS

88. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

89. As set forth more fully above, Plaintiff is owed payment for wages for work that he performed for Podopolo that was due and owed to him for 2021 and 2022 – which Defendant repeatedly promised to pay, but as of this date have not paid.

90. As a result of Podopolo unilaterally decreasing Plaintiff's wages, he was making less than minimum wage for the hours that he worked for the Company.

91. Further, 2022, Plaintiff was not paid at all for certain pay periods and as a result, did not make minimum wage for those pay periods.

92. Further, between February and May of 2022, Plaintiff was making approximately $830 per week but not being paid overtime at time and a half for the hours he worked in excess of forty (40) hours per week, which often totaled thirty (30) to forty (40) *additional* hours of work per week.

93. Employers are liable for failure to pay minimum wage and overtime when due and as such, Podopolo's conduct in this regard is unlawful and in violation of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201, *et seq*, and *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991).

94. As a direct and/or proximate result of the aforesaid unlawful employment practices engaged in by Podopolo, Plaintiff sustained the harm detailed herein, including but not limited to loss of earnings and loss of the value of certain benefits.

95. As a direct and/or proximate result of the aforesaid unlawful employment practices engaged in by Podopolo, Plaintiff was forced to take out multiple high-interest loans in order to provide for his family.

96. In light of Plaintiff's contributions to the Company and fulfillment of his employment obligations, Podopolo had no good faith basis to contest or dispute Plaintiff's right to receive his promised compensation from Podopolo.

97. Instead, Ms. Wittstock admitted that Plaintiff is owed money from Podopolo, further evidencing that Podopolo's failure to compensate Plaintiff was knowing and purposeful.

98. Furthermore, pursuant to 29 U.S.C.S. § 203 *et seq.*, and *Scholly v. JMK Plastering, Inc.*, No. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958 (E.D. Pa. June 25, 2008), any agent of Podopolo who participated in refusing to pay Plaintiff's wages and/or wage supplements is ***personally liable*** under the FLSA.

99. Defendants Ms. Wittstock and Mr. Little both personally promised to compensate Mr. Hauge at his agreed upon rate.

100. Additionally, Ms. Wittstock agreed with Mr. Hauge that he was entitled to at least some back pay and that Podopolo would compensate him. *See* Ex. D.

101. Accordingly, pursuant to the FLSA, Plaintiff is also entitled to attorneys' fees, and Defendants Ms. Wittstock and Mr. Little are ***personally*** liable for Plaintiff's wages, attorneys' fees and liquidated damages. 29 U.S.C.S. § 216(b).

**WHEREFORE**, Plaintiff demands judgment in his favor and against Podopolo, for an amount exceeding $75,000 in accordance with his promised rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been forced to resign due to Podopolo's failure to compensate him, including an award of back pay, and pre-and post

judgement interest, together with costs of suit and reasonable attorneys' fees pursuant to 29 U.S.C.S. § 216(b).

## COUNT II
## (PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW)
### 43 Pa. Cons. Stat. Ann § 260.1 *et seq.*
### PLAINTIFF v. ALL DEFENDANTS

102. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

103. Pursuant to Pennsylvania's Wage Payment and Collection Law ("WPCL"), every employer is obligated to pay all wages and wage supplements due to its employees. 43 Pa. Cons. Stat. Ann. § 260.3.

104. Pursuant to the WPCL, an employer includes but is not limited to, "every person, firm or partnership, association, corporation receiver or . . . any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." *Id.,* at 260.2a.

105. Pursuant to the WPCL, wages include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation. The term 'wages' also includes fringe benefits or wage supplements." *Id.*

106. Pursuant to the WPCL, wage supplements include "any other amount to be paid pursuant to an agreement to the employee." *Id.*

107. As set forth fully above, Podopolo agreed to pay Plaintiff:

    a. "an annual compensation of $170,000 comprised of a starting base salary of $160,000 to be paid on a twice-monthly basis, as well as quarterly bonuses";

    b. "participation in the company's equity plan (Unit Appreciation Rights Plan), with an initial grant of 8,000 profits interest units representing an initial 1.02% of the company to vest over a three-year period";

      c.      Eligibility to participate in Podopolo's "employee benefits program, including health, dental and vision"; and

      d.      "twelve (12) paid Personal Time Off (PTO) days as well as eight (8) federal holidays, and five (5) sick days, on an annual basis".

*See* Ex. A.

108. Plaintiff accepted the terms of his employment and worked for almost nine months in accordance with these terms.

109. However, in or about November of 2021, Defendants ceased paying Plaintiff as promised and Plaintiff was forced to work at a reduced salary to which he never agreed and, at times, without any compensation at all.

110. Instead, Plaintiff relied on Defendants' promise of compensation at his rate of pay, all benefits which he was owed, plus back pay.

111. Defendants failed to fulfil that promise and pay Plaintiff the agreed upon wages that he earned and accrued.

112. Defendant, Podopolo is an "employer" pursuant to the WPCL, as it does business and employs people in the Commonwealth, including but not limited to Plaintiff, who worked from his Pennsylvania home for Podopolo.

113. Defendants' unlawful withholding of Plaintiff's compensation constitutes a violation of the WPCL.

114. Furthermore, pursuant to Pa. Cons. Stat. Ann. § 260.2 *et seq.,* and *Faden v. deVitry,* 625 A.2d 1236, 1239 (Pa. Super. Ct. 1993), any agent of Podopolo who participated in refusing to pay Plaintiff's wages and/or wage supplements is ***personally liable*** under the WPCL.

115. Defendants Ms. Wittstock and Mr. Little both personally promised to compensate Mr. Hauge at his agreed upon rate.

116. Additionally, Ms. Wittstock agreed with Mr. Hauge that he was entitled to at least some back pay and that Podopolo would compensate him. *See* Ex. D.

117. However, Defendant Podopolo, at the direction of Defendants Ms. Wittstock and Mr. Little, failed to pay Plaintiff his wages and/or wage supplements.

118. In light of Plaintiff's contributions to the Company and fulfillment of his employment obligations, Podopolo had no good faith basis to contest or dispute Plaintiff's right to receive his agreed upon compensation from Podopolo.

119. On the contrary, Ms. Wittstock admitted that Mr. Hauge was owed the money, and Mr. Little who was copied on the correspondence did not dispute the same.

120. Accordingly, pursuant to the WPCL, Plaintiff is also entitled to attorneys' fees and liquidated damages of 25% and Defendants Ms. Wittstock and Mr. Little are ***personally*** liable for Plaintiff's wages, attorneys' fees and statutory liquidated damages. 43 Pa. Cons. Stat. Ann. §§ 260.9(a), 260.10.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, Podopolo, Melinda Wittstock and Stephan Little, for an amount exceeding $75,000, including an award of back pay and pre-and post judgement interest, along with liquidated damages of 25%, attorneys' fees, and any such other relief this Court deems equitable and just.

### COUNT III
### (UNJUST ENRICHMENT)
### PLAINTIFF v. ALL DEFENDANTS

121. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

122. Plaintiff conferred upon Defendants the benefits of Plaintiff's efforts, expertise, and work product.

123. At all times material hereto, in conferring these benefits on Defendants, Plaintiff acted in reliance on the promise that he would be compensated for his efforts.

124. Defendants received and accepted such benefits.

125. Defendants have unlawfully, and without paying fair market value, retained these benefits for themselves.

126. Defendants' retention of these benefits, without payment of value to Plaintiff, is inequitable.

127. Notably, Defendant Ms. Wittstock admitted that Defendants owe Mr. Hauge money, but refuse to pay him the money.

128. Such conduct has caused Plaintiff substantial harm as detailed above.

129. Defendants conduct in this regard was knowing, purposeful, reckless, extreme, outrageous and intolerable in a civilized society, justifying the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against all Defendants for an amount exceeding $75,000, including an award of back pay, expense reimbursement, and pre- and post judgement interest, together with punitive damages and any such other relief this Court deems equitable and just.

Respectfully Submitted,

**KAMINSKY LAW, LLC**

Dated:  November 28, 2022

BY: _____
Anton Kaminsky, Esquire
PA I.D. No. 322660
Aubrie Linder, Esquire
PA I.D. No. 332406
207 Buck Rd. Ste 2
Southampton, PA 18966
(215) 876-0800
*Attorneys for Plaintiff*